UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DAVID BURNS,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>TASHEENA SANDOVAL, *et al.*,<br><br>　　　　　　Defendants. | Case No. 3:18-cv-00086-MMD-CLB<br><br>**REPORT AND RECOMMENDATION<br>OF U.S. MAGISTRATE JUDGE**[1] |

This case involves a civil rights action filed by Plaintiff David Burns ("Burns") against Defendants Harold "Mike" Byrne ("Byrne"), Daniel Clark ("Clark"), William Gittere ("Gittere"), Frederick Hammel ("Hammel"), Hal Hollingsworth ("Hollingsworth"), Walter Romero ("Romero"), Tasheena Sandoval ("Sandoval"), Melissa Travis ("Travis"), and James Underwood ("Underwood") (collectively referred to as "Defendants").[2] Currently pending before the court is Defendants' motion for summary judgment (ECF Nos. 105, 107).[3] Burns responded and filed a cross-motion for summary judgment (ECF Nos. 111/112),[4] and Defendants replied (ECF No. 115). Also pending before the court is Burns's motion for temporary restraining order (ECF No. 103) and his motion for an adjudication as to liability (ECF No. 104). Defendants responded (ECF No. 109, 113, respectively), and no replies were filed. Having thoroughly reviewed the record and

---

[1]　This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice IB 1-4.

[2]　Burns also named Leslie Healer ("Healer") as a defendant in his complaint. However, on January 14, 2020, the court dismissed the claims against Healer for a failure to effectuate service pursuant to Fed. R. Civ. P. 4(m). (*See* ECF No. 78).

[3]　ECF No. 107 consists of sealed documents filed in support of Defendants' motion for summary judgment.

[4]　ECF Nos. 111 and 112 are identical documents.

papers, the court recommends Defendants' motion for summary judgment (ECF No. 105) be granted, Burns's cross-motion for summary judgment (ECF No. 111) be denied, and Burns's motion for temporary restraining order (ECF No. 103) and motion for adjudication (ECF No. 104) be denied as moot.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Burns is an inmate in the custody of the Nevada Department of Corrections ("NDOC"). On February 23, 2018, proceeding *pro se*, Burns filed a civil rights complaint pursuant to 42 U.S.C. § 1983 for events that occurred while Burns was incarcerated at the Ely State Prison ("ESP"). (ECF No. 1-1.) On December 5, 2019, Burns filed a third amended complaint, which is the operative complaint in this case. (ECF No. 86.) Pursuant to Federal Rule of Civil Procedure 15(a)(2), the court allowed Burns's to amend his complaint and proceed with the following: (1) in Count I, a failure to protect claim against Defendants; and (2) in Count II, a retaliation claim against Defendants. (ECF Nos. 84, 85.)

### A.   Allegations in Third Amended Complaint

In Count I of Burns's Third Amended Complaint ("TAC"), Burns alleges the following: On September 29, 2017, Burns was moved to Unit 7B from Unit 6A of ESP, where Burns was housed three doors down from an inmate, Avery, who had previously stabbed Burns in the face, chest, and collarbone in an altercation on June 3, 2017. (ECF No. 86 at 6.) Shortly after Burns was moved to the new unit, inmate Avery again stabbed Burns in the shoulder and torso. (*Id.*) Burns alleges inmate Avery was caught on camera getting rid of a knife after the altercation. (*Id.*) Avery is a known enemy of Burns due to disciplinary charges and pictures taken on June 3, 2017 and entered into the Nevada Offender Tracking Information System ("NOTIS") and/or I-File. (*Id.*) Burns was housed in segregation from June 3, 2017 to September 21, 2017, when he was moved to Level 2 housing. (*Id.*)

Defendants are all members of the ESP Housing Committee. (*Id.*) Defendants knew of Burns's past with inmate Avery, but deliberately moved him. (*Id.* at 7.)

2

1  Defendants on the housing committee created a "gladiator like environment" where
2  Burns was left to defend himself against a known enemy. (*Id.*) The move had no
3  "penological interest." (*Id.*)  Burns alleges that he now has nerve damage due to these
4  injuries. (*Id.*)

5  In Count II, Burns alleges the following: Defendants retaliated against Burns for
6  filing grievances "for exhaustion of administrative remedies." (*Id.* at 8.) Burns was
7  moved, in retaliation for filing multiple grievances, from Unit 6A to Unit 7B of ESP where
8  Burns was stabbed again by an inmate who had previously attacked Burns. (*Id.*) Burns
9  filed multiple grievances against various ESP employees before the alleged retaliatory
10 move. (*Id.*) Burns filed grievances for future court actions, which is a protected right. (*Id.*)
11 Burns was met with adverse action by being moved from safe housing to being moved
12 three doors down from an inmate who had previously stabbed Burns, and Burns was
13 attacked again as a result. (*Id.*) There is a causal connection between Burns's
14 grievances and the retaliatory move. (*Id.*)

15 Burns was further retaliated against by Caseworker Travis after being put in her
16 Unit. (*Id.* at 9.) Once the write-up was fully handled, Burns was eligible to leave the
17 segregation unit. (*Id.*) Burns verbally asked Caseworker Travis if he could leave
18 segregation after dealing with the write-up, and was told "no," but Burns's neighbor who
19 handled in his write-up on the same day, was permitted to leave segregation. (*Id.*) None
20 of Burns's request forms were answered and any attempt at speaking to his caseworker
21 was ignored. (*Id.*) Burns was forced to go above Caseworker Travis's head and mention
22 her conduct to Head Caseworker Sandoval. (*Id.*) Further retaliation came from
23 Caseworker Sandoval's handling of grievance process by denying Plaintiff's grievances
24 and "stating untimely filings" when Burns filed within the designated six-month time
25 frame. (*Id.*) Caseworker Travis acted in further retaliation by handling an issue she was
26 named in and lying to officers by saying Burns "refused to sign." (*Id.*) Burns participated
27 in protected activities and Defendants took adverse action against Burns—there is a
28 causal connection between timing of grievance filing and move. (*Id.*)

### B. Defendants' Motion for Summary Judgment and Burns's Cross-Motion for Summary Judgment

On July 30, 2020, Defendants filed a motion for summary judgment. (ECF No. 105.) Defendants argue (1) Burns has not properly exhausted his administrative remedies, (2) Burns cannot show personal participation on the part of most Defendants, (3) Burns cannot meet his burden to show Defendants violated his Eighth Amendment rights, and (4) Burns cannot meet his burden to show Defendants violated his First Amendment rights. (*Id.*) In response to Defendants' motion for summary judgment, Burns filed a response and cross-motion for summary judgment. (ECF Nos. 111/112.)

## II. LEGAL STANDARD

Summary judgment should be granted when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify which facts are material." *Id.* A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Id.* Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996).

Summary judgment proceeds in burden-shifting steps. A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex,* 477 U.S. at 323*; Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences

arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.,* 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324.

For purposes of opposing summary judgment, the contentions offered by a pro se litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge and set forth facts that would be admissible into evidence and the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

**III.   DISCUSSION**

**A.   Civil Rights Claims under 42 U.S.C. § 1983**

42 U.S.C. § 1983 aims "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000)). The statute "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights[,]" *Conn v. Gabbert*, 526 U.S. 286, 290 (1999), and therefore "serves as the procedural device for enforcing substantive provisions of the Constitution and federal statutes." *Crumpton v. Almy*, 947 F.2d 1418, 1420 (9th Cir. 1991). Claims under section 1983 require a plaintiff to allege (1) the violation of a federally-protected right by (2) a person or official acting under the

color of state law. *Warner*, 451 F.3d at 1067. Further, to prevail on a § 1983 claim, the plaintiff must establish each of the elements required to prove an infringement of the underlying constitutional or statutory right.

### B.     Personal Participation

"There are two elements to a section 1983 claim: (1) the conduct complained of must have been under color of state law, and (2) the conduct must have subjected the plaintiff to a deprivation of constitutional rights." *Jones v. Cmty. Redevelopment Agency of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984). A prerequisite to recovery under the Civil Rights Act, 42 U.S.C. § 1983, is that the plaintiff prove that the defendants deprived him of a right secured by the Constitution and the laws of the United States. *Gomez v. Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985). Liability under § 1983 arises only upon a showing of personal participation by the defendant. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). "[V]icarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S. Ct. 1937, 1948, 173 L.Ed. 2d 868 (2009).

Defendants argue Burns has failed to demonstrate personal participation in the alleged constitutional violations as to Defendants Clark, Gittere, Byrne, Underwood, Romero, Hollingsworth, and Travis, as they were not involved in the decision to move Burns. (ECF No. 105 at 8.)  Defendants assert that only Sandoval and Hammel were involved in the decision to move Burns, as the housing committee described by Burns was non-operational at the time of his move. (*Id.*)  In opposition, Burns asserts that each of the named defendants were all members of the housing committee established through ESP operational procedures, which determines housing, and were therefore

1  responsible for his move. (ECF No. 111 at 12.)

2  Aside from Burns's contention that a housing committee exists pursuant to ESP operational procedure (*See* ECF No. 111 at 5-6), Burns provides no evidence that such a committee actually met and made a determination about Burns's housing situation. Instead, Defendants provide the sworn declaration of Defendant Sandoval, which states that there was no functioning housing committee at the time of Burns's move. (ECF No. 105-12.) The declaration also states that Sandoval, herself, approved the move after the decision was made by Defendant Hammel, and no other defendants were involved in the decision to move Burns. (*Id.*) Further, sworn declarations from Defendants Hollingsworth, Romero, and Gittere also support that a housing committee was not functioning at the time of Burns's move and thus there was no committee meeting regarding the move. (*See* ECF Nos. 105-4, 105-5, 105-6.) Burns's bare assertion that because operational procedures established a housing committee, all the named defendants must have been aware of the move, is insufficient to overcome the evidence provided by Defendants to the contrary. Without more, the alleged facts do not show any personal participation or knowledge by Defendants Byrne, Clark, Gittere, Hollingsworth, Romero, Travis, or Underwood, and, therefore, summary judgment is appropriate.

### C.    Failure to Exhaust Administrative Remedies

Next, Defendants assert that Burns failed to properly exhaust his administrative remedies, as he did not file his grievances within the applicable timeframe and did not appeal his grievances past the informal level. (ECF No. 105 at 5-7.) Burns does not appear to dispute that he failed to exhaust his administrative remedies, but instead argues that he was precluded from pursuing his grievances. (*See* ECF No. 111 at 6-7.)

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

7

Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The requirement's underlying premise is to "reduce the quantity and improve the quality of prisoner suits" by affording prison officials the "time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation." *Id.* at 524–25.

It is well established that the PLRA requires "proper exhaustion" of an inmate's claims. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Proper exhaustion means an inmate must "use all steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009) (citing *Woodford*, 548 U.S. at 90). Additionally, "proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford*, 548 U.S. at 90. Here, it appears Burns failed to follow all required steps to allow prison officials to reach the merits of the issue. Burns's grievance history shows that he filed four grievances, within the applicable timeframe that addressed the housing move and September 29, 2017 altercation—Grievances 2006-30-57840, 2006-30-68491, 2006-30-59433, and 2006-30-59435. (*See* ECF Nos. 105-14, 105-15, 105-16, 105-17, 105-18.) None of the grievances were appealed past the informal stage, thus none of Burns's grievances were exhausted. Accordingly, the court finds that Burns failed to exhaust his administrative remedies pursuant to AR 740 prior to initiating this action.

The burden now shifts to plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172 (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n. 5 (9th Cir. 1996)). Burns provides no evidence to show that administrative remedies were unavailable to him. Burns only asserts that Defendants Sandoval and Travis improperly handled the grievance process, but does not provide any evidence of his assertion. Burns's self-serving

statement provides an insufficient basis from which a reasonable jury can find in his favor, in light of the documentary evidence Defendants have presented. Because Burns presents no evidence that administrative remedies were effectively "unavailable," the court concludes that Burns failed to exhaust available administrative remedies prior to filing this action as to his Eighth Amendment failure to protect and First Amendment retaliation claims. Accordingly, the court recommends that summary judgment be granted in favor of Defendants.

Because the court recommends that Defendants' motion for summary judgment (ECF No. 105) be granted, it necessarily recommends that Burns's cross-motion for summary judgment (ECF No. 111) be denied.

### F.     Motion for Temporary Restraining Order and Motion for Adjudication

In light of this Report and Recommendation that Defendants' motion for summary judgment be granted, the court recommends that Burns's motion for temporary restraining order (ECF No. 103) and motion for adjudication (ECF No. 104) be denied as moot.

### IV.    CONCLUSION

Based on the foregoing, the court recommends that Defendants' motion for summary judgment (ECF No. 105) be granted, Burns's cross-motion for summary judgment (ECF No. 111) be denied, and Burns's motion for temporary restraining order (ECF No. 103) and motion for adjudication (ECF No. 104) be denied as moot. The parties are advised:

1.     Pursuant to 28 U.S.C § 636(b)(1)(C) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

///

2. This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment (ECF No. 105) be **GRANTED**;

**IT IS FURTHER RECOMMENDED** that Burns's cross-motion for summary judgment (ECF No. 111) be **DENIED**;

**IT IS FURTHER RECOMMENDED** that Burns's motion for temporary restraining order (ECF No. 103) and motion for adjudication (ECF No. 104) be **DENIED AS MOOT**; and,

**IT IS FURTHER RECOMMENDED** that the Clerk of Court **ENTER JUDGMENT** and **CLOSE** this case.

**DATED**: November 3, 2020

_____
**UNITED STATES MAGISTRATE JUDGE**